IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MOUNTAIN FORESTRY, INC.;<br>FRANCISCO CISNEROS; PEREZ<br>REFORESTATION, INC.; JOSE PEREZ,<br>OREGON FORESTRY, INC.; OLIGARIO<br>BARAJAS; NORTH PACIFIC FORESTRY,<br>INC.; SALVADOR PERES; and ELOY<br>PEREZ, | 06-CV-1082-AC<br><br>FINDINGS AND<br>RECOMMENDATION |

                              Plaintiffs,

            v.

OREGON DEPARTMENT OF FORESTRY;
STEVEN JOHNSON; PATRICIA MORGAN;
DON MORITZ; and BILL LAFFERTY,

                              Defendants.
_____

ACOSTA, Magistrate Judge:

### Findings and Recommendation

        The plaintiffs in this case, and the wildland firefighting companies they own, are dissatisfied

with the manner in which defendant Oregon Department of Forestry ("ODF") manages wildland

firefighting crews.  The plaintiffs are Hispanic individuals and contend that ODF, and its employees

Steven Johnson, Patricia Morgan, Don Moritz and Bill Lafferty, all of whom are also named as defendants, racially discriminate in awarding contracts to firefighting companies and in monitoring the companies compliance with contractual requirements.  ODF, Johnson, Morgan, Moritz and Lafferty (collectively "Defendants") move for summary judgment on all claims asserted by the plaintiffs.[1]  For the reasons set out below, Defendants' motion should be granted and Plaintiffs' claims should be dismissed, with prejudice.

## *Background*

ODF  is responsible for operating a "Protection from Fire" program designed to protect private and public forestland from fire on behalf of various state and federal agencies.[2]  ODF contracts with numerous private firefighting companies who provide fire suppression crews and equipment pursuant to annual contracts between ODF and the company.  Prior to each firefighting season, ODF issues a Request for Proposal soliciting sealed bids from private firefighting companies.  Successful companies are awarded a standard form Interagency Firefighting Crew Agreement (the "Contract").  ODF currently uses a "best value" contracting system which incorporates past performance and compliance issues into the formula for determining which proposals will be accepted and, accordingly, which companies will be offered Contracts.  Other factors include price and bid responsiveness.

The Contract contains numerous clauses related to the safety of the crew, including

---

[1]Defendants have not moved against the claims of Salvador Perez, Eloy Perez and North Pacific Forestry, Inc., based on their understanding that these plaintiffs intend to voluntarily dismiss their claims.

[2]These include the states of Oregon and Washington as well as the United States Department of Interior's Bureau of Land Management and Bureau of Indian Affairs, the United States Department of Agriculture's Forest Service and the National Park Service.

provisions requiring:  1) English-speaking personnel in some supervisory positions and bi-lingual personnel in others; 2) the maintenance of certain records; 3) compliance with specified training procedures and physical tests for the firefighters; and 4) all individuals working as firefighters be 18 years or older.[3]  Contract holders are also obligated to designate a "dispatch location" big enough to accommodate the inspection of a full crew.[4]

A primary concern of ODF is the safety of firefighting personnel.  In 2002, ODF created a dedicated compliance unit to address what it believed to be significant performance issues.  The unit began regular inspecting crews and crew records and solicited performance feedback.  Violations of contract safety issues led to contract enforcement actions, including letters of concern, suspension and termination.

Plaintiffs Francisco Cisneros, Jose Perez and Oligario Barajas are the majority shareholders or owners of corporate plaintiffs Mountain Forestry, Inc. ("MFI"), Perez Reforestation, Inc. ("PRI"), and Oregon Forestry, Inc. ("OFI"), respectively (collectively "Plaintiffs").  MFI, PRI and OFI (the "Corporate Plaintiffs") are in the business of providing firefighting crews to ODF pursuant to a Contract.  All of these companies, with the exception of OFI, have a history of numerous compliance issues resulting in various enforcement actions.  Plaintiffs assert that these enforcement actions are the result of discriminatory animus by Defendants against Plaintiffs' Hispanic heritage.

All of the Plaintiffs assert that ODF singles out the employees of Hispanic-owned companies when evaluating crew and squad bosses for language proficiency.  The common complaint is that

---

[3]This specific age requirement was added to the Contract in 2003.  Prior to that, all Oregon employers, including private firefighting companies, were obligated by statute to obtain a permit for all employees under the age of 16.

[4]In 2006, the ODF required the dispatch area be at least 3,000 square feet.

the evaluation of the Corporate Plaintiffs' employees is more extensive and takes longer than the evaluation of the crews of Caucasian contractors. Cisneros represents that he has "seen many instances where the evaluators are searching for reasons to send Hispanics home" and that he heard ODF evaluator, Sandy Mergel, tell one of his employees that "you're not supposed to have Mexicans" on your crew. (Kramer Aff. Ex. 3 at 6.) Perez personally witnessed ODF employees evaluating firefighters and believes that the employees of Caucasian contractors were asked fewer questions and were not required to commit fire situations and orders to memory while two of Perez's squad bosses were rejected for not knowing the same information. He expressed concern about the absence of evaluation criteria and objected to a single evaluator having the authority to decide who was sufficiently fluent in English. He noted that some of his employees were rejected under the language provision but then were deemed acceptable in 2007. Barajas complained that ODF evaluators were given too much discretion and were allowed to reject firefighters who had a thick accent even if the individual was proficient in English. Additionally, he questioned how evaluators who did not speak Spanish could determine if a firefighter was proficient in Spanish. Barajas recently observed an evaluator allow a Caucasian crew boss, who failed a Spanish proficiency test, to work on a fire with his crew. He indicated that he felt that would have never happened had the crew boss been Hispanic.

MFI has been disciplined on numerous occasions for violations of the Contract. In July 2004, MFI was suspended, and its Contract for that year eventually terminated, for falsifying taskbooks and pack-test results, and for using underage firefighters. The disciplinary actions occurred after a meeting in July 2004 in which ODF officials, including Moritz, Protection Unit Contract Services Manager; Johnson, the compliance officer in charge of the investigation of MFI's

violations; and Morgan, the contract officer who issued the order suspending MFI's Contract based on Johnson's investigation, met with Cisneros and other MFI employees, including Michael Cox, the husband of MFI minority shareholder Penny Cox;[5] and Virgil Urena, the individual primarily responsible for training MFI's firefighters.   The meeting was intended to inform MFI of the inconsistencies and deficiencies in their training records.  Cox testified at his deposition that Moritz ended the meeting by stating that "You've had your hour" and then, while addressing Cisneros, saying "'And I find you and your kind responsible for these actions.  You, Francisco' – with his finger quivering at him – 'are totally responsible for all these problems.'"  (Cox Dep. 17:14-18.)[6] Johnson also met with other agency representatives, including representatives from Oregon's Bureau of Labor and Industries ("BOLI") and State Accident Insurance Fund ("SAIF") in July 2004 to share information about the then alleged falsification of documents by MFI.  Johnson represents that he often works and shares information with other federal and state agencies, that each of these agencies conduct their own, independent investigations with regard to firefighter safety, and that none of the representatives expressed any racial bias.

MFI challenged the termination of its Contract in August of 2004 by filing an action in state court.  The court denied MFI's motion for preliminary injunction and the parties stipulated to a

---

[5]Penny Cox is Caucasian and owns 48 per cent of MFI.

[6]Cox's deposition excerpts are attached to the declaration of Kevin J. Jacoby in which he represents that they "are excerpts from the deposition of Michael Cox conducted on March 15, 2007." (Jacoby Decl. ¶ 2.)  The excerpts do not identify the name of the deponent or the action in which the deposition was taken and are not certified by the reporter.  Accordingly, the excerpts are not properly authenticated and are not admissible. See *Orr v. Bank of America*, 285 F.3d 764, 774 (9th Cir. 2002).  In light of  Defendants' lack of objection to Plaintiffs' use of the excerpts and the fact that the evidence contained in the excerpts is not outcome determinative, as discussed below, the court will consider the evidence in this Findings and Recommendation.

general judgment of dismissal with prejudice.  (Johnson Aff. Ex. A, B.)  A dispute exists between the parties with regard to whether the state court action included allegations of racial discrimination by ODF.

ODF's termination of MFI's license in 2004 also resulted in an administrative proceeding initiated by BOLI against MFI and Cisneros.  MFI and Cisneros alleged, as an affirmative defense, that ODF's decision to terminate the Contract was based on Cisneros's race or ethnicity.  The ALJ granted BOLI's motion to strike this affirmative defense finding that the issue was not relevant to whether MFI or Cisneros violated the terms of the Contract.

After a hearing, at which Cisneros was assisted by an interpreter,[7] BOLI Commissioner Dan Gardner issued a 200-page Final Order.  He found that MFI and Cisneros employed at least one underage firefighter in both 2000 and 2003, employed at least four firefighters who did not have the minimum training or experience required of their positions, and deliberately fabricated the records of two firefighters.  Commissioner Gardner fined MFI and Cisneros over $55,000 for the violations, denied MFI and Cisneros a license to act as a farm/forest labor contractor effective the date of the Final Order (May 11, 2007), and prohibited MFI and Cisneros from reapplying for a license for a term of three years.  MFI and Cisneros appealed this ruling and the appeal remains pending.

While the BOLI litigation was pending, ODF awarded MFI Contracts for 2005 and 2006 and continued to discipline MFI for violations of the Contract.  In July 2005, MFI was suspended

---

[7]In Cisneros's request for an interpreter, he represented to BOLI that he was unable to speak or understand the English language.

for one day for failing to have two drivers with a current MPSA license.[8]  The next month, MFI was issued a letter of concern for using a vehicle with inoperable seatbelts.[9]  At the beginning of fire season in 2006, an MFI crew was rejected and sent home without travel pay for not having enough 2006 fire cards.  Cisneros argued that the 2005 cards should have been sufficient as the crew was working under the 2005 Contract, that ODF could have accepted the crew with just 18 members, and that the crew should have been given the customary two hours to cure the deficiency.  In August 2006, ODF issued a letter of concern after it became involved in an altercation between two MFI crew members.  Later that month, MFI was listed on an incident report when a police officer with a drug-sniffing dog searched various campsites even though no drugs were found at MFI's campsite.  In September 2006, MFI was suspended for two months when a crew boss failed to sign his crew's time sheet.

ODF also issued disciplinary actions against PRI.  On at least one occasion, PRI was suspended for arriving late to a designated dispatch site.  In September 2005, PRI's Contract was suspended, and eventually terminated, for falsifying an employee's records.  There is no evidence that OFI was involved in any disciplinary actions and Moritz confirms that OFI had a good compliance history.[10]

None of the Plaintiffs are currently doing business with ODF.  MFI and PRI did not submit

---

[8]MFI complains that ODF did not allow it to remedy the problem by providing copies of the old license and the application for a current license.  The Suspend and Resume Order indicates that ODF allowed MFI to fax copies of the application and that the initial application, not the renewal form, was provided.

[9]MFI indicates that the vehicle previously passed inspections in the same condition.

[10]North Pacific Forestry, Inc. was the subject of a number of disciplinary actions. Because Defendants are not moving against North Pacific Forestry, Inc., the court will not consider this evidence.

a proposal for the 2007 Contract. OFI submitted a proposal in 2007 but was not awarded a Contract due to a unacceptably high bid price.

Plaintiffs filed this action on July 28, 2006, asserting claims for racial discrimination under 42 U.S.C. §§ 1981, 1983, 1985 and 2000(d). On each of their claims, Plaintiffs ask the court to: 1) find that Defendants have engaged in a conspiracy to deprive Plaintiffs of their civil rights; 2) permanently enjoin Defendants from discriminating against Hispanics in the administration and enforcement of the Contract; and 3) award Plaintiffs money damages sufficient to compensate them for harm cause by Defendants' discriminatory actions.

### Legal Standard

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). "[T]he requirement is that there be no *genuine* issue of *material* fact." *Anthes v. Transworld Systems, Inc.*, 765 F. Supp. 162, 165 (D. Del. 1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986))(emphasis in original).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is absent. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the onus is on the nonmovant to establish that there is a genuine issue of material fact. *Id*. at 324. In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

An issue of fact is material if, under the substantive law of the case, resolution of the factual

dispute could affect the outcome of the case. *Anderson*, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted).

The evidence presented in support of or in opposition to a motion for summary judgment must be based on personal knowledge, properly authenticated and admissible under the Federal Rules of Evidence. Fed. R. Civ. P. 56(e). "The requirement of authentication * * * as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims" Fed. R. Evid. 901(a). Evidence that is not properly authenticated will not be considered by the court when reviewing a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d at 773.

*Discussion*

## 1. Title VI

In their First Claim for Relief, Plaintiffs allege that ODF has engaged in racially discriminatory practices in the manner in which it awards, administers and enforces the Contracts in the hopes of forcing Hispanic contractors out of business, in violation of 42 U.S.C. §2000d ("Section 2000(d)"). Plaintiffs assert that ODF engaged in a concerted effort to terminate its Contracts with Hispanic contractors and, after the termination of the Contract, continued its efforts by lobbying SAIF to cancel Plaintiffs' workers' compensation coverage and BOLI to revoke Plaintiffs' farm labor contractor's licenses, thereby eliminating Plaintiffs' ability to remain in the firefighting business. ODF is also alleged to have intentionally incorporated provisions into the

Contract which disproportionately affect Hispanic contractors, including the requirement that all supervisory personnel on fire crews have a fluent understanding of the English language incorporated in 2003 and the requirement incorporated in 2006 that all contractors designate a sole-use assembly site of at least 3,000 feet. Plaintiffs assert that the many changes to the 2006 Contract shortly before the submission date for proposals served a substantial hardship on most Hispanic contractors and that these hardships continued even after ODF extended the submission date when it failed to solicit enough crews to meet its needs. Plaintiffs also contend that the "best value" contracting system, which takes into account a contractor's compliance history, discriminates against Hispanic competitors.

Section 2000(d) provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." Plaintiffs allege that ODF "has received and employed federal funding to support its solicitation, award, administration and enforcement of the [Contracts]" and is subject to the restrictions set forth in Section 2000(d). (Compl. ¶ 4.) Defendants denied this allegation in their answer but admitted at oral argument that ODF receives federal financial assistance and is required to abide by the constraints set forth in Section 2000(d).

Defendants contend that the court need not address the merits of Plaintiffs' Section 2000(d) claim for two reasons: 1) Plaintiffs, as private litigants, are not entitled to compensatory relief under that statute; and 2) Plaintiffs have failed to establish the ongoing harm required to support injunctive relief. In *Guardians Ass'n v. Civil Serv. Comm'n of the City of New York*, 463 U.S. 582, 598 (1983), the Supreme Court made it clear that the remedies available to private litigants alleging

unintentional disparate-impact discrimination are limited to "declaratory and injunctive relief ordering future compliance with the declared statutory and regulatory obligations."  The Court did, however, leave the door open for private litigants to seek compensatory damages when they are able to prove that a federally-financed program engaged in intentional discrimination:

> In cases where intentional discrimination has been shown, there can be no question as to what the recipient's obligation under the program was and no question that the recipient was aware of that obligation.  In such situations, it may be that the victim of the intentional discrimination should be entitled to a compensatory award, as well as to prospective relief in the event the state continues with the program.

*Id*. at 597.  Plaintiffs allege that

> ODF engaged in a concerted effort to summarily terminate its contracts with Hispanic contractors, including the corporate plaintiffs, motivated primarily by an animus towards persons of Hispanic decent and/or prejudices that people of Hispanic decent are more likely than their Caucasian competitors to cut corners or engage in misconduct in order to make money, or other such intentional racial bias.

(Compl. ¶ 5.)  Plaintiffs have clearly alleged intentional discrimination and are, therefore, entitled to pursue compensatory relief.

Defendants also argue that Plaintiffs have failed to show that they are suffering ongoing harm and, consequently, are not entitled injunctive relief.  In other words, Defendants assert that because Plaintiffs have alleged only past violations, they have failed to state a justiciable claim or controversy under Article III.  "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)(citing *Flast v. Cohen*, 392 U.S. 83, 94-101 (1968)).  "Plaintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *Id*. (quoting *Baker v. Carr*, 369 U.S. 186, 204

(1962)).  Failure to meet such a requirement renders the case moot.  *Id*.

The burden of proof to overcome mootness rests firmly with the plaintiff. *Nelsen v. King County*, 895 F.2d 1248, 1251 (9th Cir. 1990).  In order to meet such a burden, plaintiff must show a "credible threat of immediate future harm." *Id*. at 1254.  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief * * * if unaccompanied by any continuing, present adverse effects."  *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)).  "'[P]laintiffs must demonstrate that a 'credible threat' exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief.  A reasonable showing of a 'sufficient likelihood' that the plaintiff will be injured again is necessary.  The 'mere physical or theoretical possibility' of a challenged action again affecting the plaintiff is not sufficient." *Nelsen*, 895 F.2d at 1250 (citations omitted.)  He must show that "there is 'a very significant possibility' that the future harm will ensue."  *Id*. (citing *Sample v. Johnson*, 771 F.2d 1335, 1343 (9th Cir. 1985), *cert. denied*, 475 U.S. 1019 (1986).

Plaintiffs admit that they are not currently performing firefighting services for ODF under a Contract.  However, Plaintiffs assert that they are able to establish continuing harm based on the fact that the Contracts are renewed annually and that ODF's discriminatory actions are the reason Plaintiffs are not currently working as firefighters.

The record reveals that MFI and PRI did not submit proposals for the 2007 Contract.  MRI and PRI's absence from the firefighting business in 2007 was the result of their decision not to seek a Contract, not ODF's prior conduct.  Neither MRI nor PRI argue that they chose not to submit bids because, based on ODF's discriminatory conduct, they were convinced they would not be awarded the Contract.  Even if such an argument were before the court, the evidence would not support it.

Virtually all of the alleged discriminatory conduct occurred in 2004 and 2005, but all of the Corporate Plaintiffs were awarded Contracts in 2006. Plaintiffs have failed to explain why they felt they would not be awarded Contracts in 2007 when they worked for ODF in 2006, after, according to them, ODF had discriminated against them in 2004 and 2005. It is evident from the record that ODF rejected OFI's proposal based on an unacceptably high bid price. OFI has not argued that the rejection of their bid for a 2007 Contract was based on their Hispanic background or on any factor other than an unacceptably high bid price.[11] Also, it is clear from the record that at least one Hispanic-owned company was awarded a Contract in 2007. Accordingly, there is no evidence in the record that allegedly discriminatory practices are the reason ODF did not award contracts to Plaintiffs in 2007.

Equally unavailing is Plaintiffs' argument that their ability to submit bids for Contracts in the future establishes the necessary continuing harm to maintain their Title VI claim. BOLI revoked MFI's farm/forest labor contractor's license and prohibited MFI from applying for another license for three years. Consequently, it is clear that MFI will not compete for a Contract for at least the next three years. Neither PRI or OFI have presented evidence that they intend to remain in the firefighting industry or that they will submit bids for future Contracts.

This court finds that Plaintiffs have failed to present a justiciable controversy entitling them prospective injunctive relief. Because Plaintiffs are limited to prospective injunctive relief on their

---

[11]The record establishes that ODF used a sealed bid process and that ODF would not have known which contractor submitted which proposal which supports its statement that OFI's bid was rejected based on the price alone.

claim of disparate impact under Title VI, they have failed to state a viable claim.[12]  Consequently, Plaintiffs' Title VI based on ODF's unintentional discrimination should be dismissed.

Even assuming that Plaintiffs have presented a justiciable controversy entitling them to injunctive relief, Plaintiff has failed to produce evidence sufficient to support their disparate-impact claim in response to Defendants' motion.  The Ninth Circuit has applied the disparate-impact analysis for Title VII to Title VI claims. *Larry P. v. Riles*, 793 F.2d 969 (9th Cir. 1986).  In Title VII cases, a "plaintiff must show that the facially neutral employment practice had a significantly discriminatory impact." *Connecticut v. Teal*, 457 U.S. 440, 446-447 (1982).  To do this, a plaintiff "must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988).  If the plaintiff is able to establish a prima facie case, the defendant must then demonstrate that "the challenged practice serves, in a significant way, the legitimate goals of the employer." *Connecticut v. Teal*, 457 U.S. at 451.

At oral argument, Plaintiffs admitted that the evidence in support of their disparate-impact claim is limited to the change in the 2006 Contract which required all contractors to have dispatch areas of at least 3,000 square feet.  The only source of this evidence is the affidavit of Tomas Cervantes, an employee of North Pacific Forestry, Inc., in which he states that:

In 2006, when the 3,000 square foot dispatch location requirement was first

---

[12]While not addressed by the parties, this court acknowledges that the Supreme Court holding in *Alexander v. Sandoval*, 532 U.S. 275 (2001), raises an issue with regard to whether a private right of action for disparate treatment exists under Title VI.  Because this court finds that Plaintiffs have failed to establish ongoing harm or to support their disparate-treatment allegations with admissible evidence, this court finds it unnecessary to address this issue at this time as well.

implemented, the only contractors who had sufficient space with the proper permits in place were Caucasian-owned. In contrast, many Hispanic-owned contractors scrambled to locate a compliant dispatch location, with limited success since ODF only gave contractors 3 months in which to find an acceptable location. Because most Hispanic-owned contractors are small businesses with limited resources, this requirement alone drastically affected the Hispanic contracting community, including North Pacific Forestry.

(Cervantes Decl. ¶ 8). Cervantes indicates that the 3,000 square foot requirement affected Hispanics more than Caucasians, however, there is no statistical evidence in the record to support this.

It is clear from the allegations contained in Plaintiffs' complaint that the changes to the 2006 Contract imposed a hardship on a number of contractors. In fact, so many contractors were unable to comply with the new standards that ODF had to amend the 2006 Contract and solicit additional bids. There is no evidence that the contractors that were detrimentally affected by the changes were primarily Hispanic. Based on the record currently before the court, Plaintiffs have failed to present the evidence necessary to support a claim for disparate-impact under Title VI. Defendants are entitled to summary judgment on this claim.

As with the disparate-impact claim, the Ninth Circuit has adopted Title VII standards in determining whether a plaintiff has presented a prima facie case of disparate-treatment discrimination in a Title VI action. *Evans v. Superior Health Services, Inc.*, 958 F.2d 376 (9th Cir. 1992). Under Title VII, "an individual suffers 'disparate treatment' when he or she is 'singled out and treated less favorably than others similarly situated on account of race or any other criterion impermissible under [Title VII].'" *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988)(quoting *Gay v. Waiters' and Dairy Lunchmen's Union*, 694 F.2d 531, 537 (9th Cir. 1982)).

A prima facie case of disparate treatment requires proof of intentional discrimination. *Id*.

A plaintiff may establish a triable issue regarding the employer's discriminatory intent through direct evidence, such as an employer's use of racial epithets, or by presenting circumstantial evidence. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

Plaintiffs urge that there is both direct and circumstantial evidence to support their intentional racial discrimination allegations. The direct evidence Plaintiffs offer consists of three comments allegedly made by ODF employees, including some of the defendants. One is Moritz's statement to Cisneros that "I find you and your kind responsible for these actions." In fact, Cisneros, as the majority owner and the operator of MFI in 2004, was responsible for MFI's poor compliance history during this period. MFI's numerous violations of the Contract in 2004 eventually led to the termination of MFI's and Cisneros's farm/forest labor contractor's license.

Cisneros described the second comment in his response to ODF's interrogatories. Specifically, that between August 2004 and December 2005, Johnson reported to other state and federal agencies that Cisneros "was a 'coyote,' a drug smuggler, knowingly hired undocumented workers, employed children in violation of the IFCA's minimum age requirement, and other statements which Plaintiff can not now recall" and included other false, fraudulent and racially-discriminatory statements in his investigative reports. (Kramer Aff. Ex. 7 at 3.) The specific statements allegedly made to other agencies, while not complementary to Cisneros, are not clearly related to Cisneros's Hispanic heritage. The investigative reports referred to by Cisneros summarized interviews Johnson conducted and documents Johnson reviewed during the course of his investigation of MFI's Contract violations. The reports did not contain any racially-biased comments and most of the information Johnson's investigation uncovered was found to be true by BOLI after a fully-contested administrative hearing.

The final comments are from Cisneros and Eloy Perez, one of the Plaintiffs who has indicated he will dismiss his claims against Defendants. Cisneros says he overheard Mergel tell one of his employees that "'you are not supposed to have Mexicans' on your crew," and Perez states that he heard Mergel say "we're trying to clean up the industry ... there are a lot of Hispanic people that try to be squad bosses and crew bosses and they are not ready for that position". Neither Cisneros nor Perez provides context for these comments or any explanation of how the comments evince discriminatory animus. Further, Mergel is not one of the defendants, and there is no evidence in the record that she had any decision-making authority for ODF, influenced any of the challenged decisions, or engaged in any discriminatory acts against Plaintiffs. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989)(O'Connor J., concurring)(statements by nondecisionmakers are not direct evidence of discriminatory intent); *Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 812 (9th Cir. 2004).

These several comments are insufficient to constitute direct evidence of race discrimination. In *Martinez v. Mary's Woods at Marylhurst, Inc.*, 2006 U.S. Dist. LEXIS 30388 (D. Or. May 16, 2006), the court granted defendants' motion for summary judgment against the plaintiff's Title VII discrimination claims notwithstanding evidence of comments similar to those alleged here. In *Martinez*, the court concluded that defendant's use of the term "bitch" in referring to plaintiff and his inquiry to plaintiff on three different occasions whether she knew what the term "beaner" meant was not sufficient to establish a hostile work environment based on race, gender, or a combination of both. *Id*. at *15-*20. The court further noted that the "mere utterance of an epithet which engenders offensive feelings" was not enough, without more, to carry her burden on summary judgment. *Id*. at *20 (internal quotations and citations omitted). Here, the comments Cisneros

describes were at best vague, and Plaintiffs failed to connect any of them to decisions they have challenged in their complaint.

Plaintiffs' circumstantial evidence does not fair any better. Plaintiffs allege that Johnson's investigations, reports and disciplinary actions were incomplete, biased and based on information that Johnson knew was false, and that Johnson forwarded his false, fraudulent and misleading reports to other state and federal agencies in an attempt to force Plaintiffs out of business. First, Plaintiffs have presented no evidence to support their claim that the investigations were unwarranted or that they had not engaged in the wrongful conduct.[13] In fact, the record reveals that Plaintiffs committed virtually all of the violations for which they were investigated and disciplined. Second, Plaintiffs have presented no evidence that Johnson did not investigate Caucasian contractors in the same manner for similar violations. In the absence of evidence revealing how Johnson treated Caucasian contractors, Plaintiffs fail to establish that they were treated differently from similarly-situated Caucasian contractors based on their race.

Morgan is alleged to have alerted "Caucasian contractors of pending investigations of their Hispanic competitors prior to ODF's notification to the contractor in question." (Compl. ¶ 11.) Plaintiffs have presented no evidence in support of this allegation. Also, there is no allegation, or evidence, that Morgan treated Caucasian contractors differently from Hispanic contractors in this regard.

---

[13]The court notes that Plaintiffs presented very little evidence in opposition to Defendants' motion for summary judgment. Plaintiffs' evidence consisted of eight pages of Cox's deposition, a three-page declaration by Cox with a single exhibit attached, and a four-page declaration by Tomas Cervantes, who worked for the corporate plaintiff that has dismissed its claims. The evidence in support of Plaintiffs' claims is derived largely from Plaintiffs' responses to Defendants' interrogatories attached as exhibits to David L. Kramer's affidavit.

Page -18- FINDINGS AND RECOMMENDATION                                    *{SIB}*

Moritz, who supervised Morgan and Johnson, is alleged to be one of the primary advocates for pushing Hispanic contractors out of the firefighting industry. He allegedly directed Morgan and Johnson to engage in discriminatory acts or knew of their discriminatory actions. With the exception of the comment he made to Cisneros at the July 2004 meeting and the fact that he authored the letter advising MFI that its 2004 Contract was terminated, there is no evidence that Moritz was involved in any of the discriminatory acts. The comment has been discussed above, and the termination letter was based on violations of the Contract that have since been determined to be true.

Finally, Plaintiffs allege that Lafferty, as the program director, knew or should have known of the allegedly discriminatory actions of Johnson, Morgan, and Moritz. Even assuming Lafferty had knowledge of his co-defendants' conduct, Plaintiffs have failed to present evidence to support their claim that such conduct was racially motivated or that they were treated differently from similarly-situated Caucasian contractors.

Additionally, Plaintiffs allege that Lafferty has "admitted that ODF's and the individual Defendants' policies and practices have a discriminatory effect on Hispanic contractors, including Plaintiffs." (Compl. ¶ 13.) There is no evidence that Lafferty admitted that ODF's practices are discriminatory. With regard to his statement about ODF's policies, Lafferty explained that when asked about ODF's decision to include English speaking requirements in the Contracts, he indicated that it was "obviously true that a practical effect of the language requirements is that a person who does not speak English may be precluded from certain fire crew leadership roles and, similarly, that a person who does not speak Spanish may be precluded from supervising certain Spanish-speaking crews." (Lafferty Aff. ¶ 5-6.) That Lafferty acknowledged the effect of the language requirement

on both Hispanic and Caucasian crew members is not the equivalent of an admission that ODF's practices have an impermissible discriminatory impact.

Finally, the record lacks any evidence with regard to how ODF treated Caucasian contractors or how that treatment differed from that afforded Plaintiffs or other Hispanic contractors. In fact, the record is to the contrary, as it contains evidence in the form of statements from Lafferty and Morgan that Defendants disciplined Caucasian contractors for violations in a manner similar to that of Hispanic contractors and that various Hispanic contractors, including OFI, had very good compliance records. Plaintiffs have produced no evidence from which a reasonable inference may be drawn that they were treated differently, in a negative way, from similarly-situated Caucasian contractors.

Even viewing all this evidence as a whole in a light most favorable to Plaintiffs, the evidence fails to support Plaintiffs' claims that ODF acted in a discriminatory manner or that the discrimination was intentional. This court finds that Plaintiffs have failed to support their Title VI claim based on either disparate impact or disparate treatment and that ODF is entitled to summary judgment on Plaintiffs' First Claim for Relief.

2. Section 1983

In their Second Claim for Relief, Plaintiffs allege that Johnson, Morgan, Moritz and Lafferty (the "Individual Defendants") "engaged in racially discriminatory actions and/or used racially discriminatory classifications" in violation of 42 U.S.C. §1983 ("Section 1983"). (Compl. ¶ 14). Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his or her federal rights. The Supreme Court has held that, with the exception of a state official being sued in his or her official capacity for prospective injunctive

relief, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiffs allege that the Individual Defendants are employees of ODF and, at all material times, were working in their capacity as ODF employees. Accordingly, the Individual Defendants fall within the definition of "persons" for the purposes of Section 1983 with regard to Plaintiffs claims for prospective injunctive relief only. Consequently, Defendants are entitled to summary judgment on Plaintiffs' request for compensatory damages under this claim.

In the absence of the compensatory damage element, which limits Plaintiffs' Section 1983 claims against the Individual Defendants to the remedy of prospective injunctive relief only, Plaintiffs have the burden of establishing that they are suffering ongoing harm to present an actual case or controversy under Article III. For the reasons stated above, this court finds that Plaintiffs' are unable to show that there is a very significant possibility that they will suffer harm in the future. Consistent with the recommended ruling on Plaintiffs' Title VI claim, this court recommends dismissing Plaintiffs' Section 1983 for failure to allege a justiciable case or controversy.

Even if this court assumes that Plaintiffs have established ongoing harm, this court finds that Plaintiffs have failed to present sufficient evidence to establish a prima facie case of discrimination under Section 1983. To state a claim under Section 1983, a plaintiff must allege that "(1) the defendant was acting under color of state law at the time the acts complained of were committed, and that (2) the defendant deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Briley v. California*, 564 F. 2d 849, 853 (9th Cir. 1977). Although Plaintiffs have met their pleading burden and stated a valid Section 1983 claim, they have not met their summary judgment burden of producing evidence sufficient to overcome Defendants'

evidentiary showing.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws. In other words, "all persons similarly circumstanced should be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982). Accordingly, in order to establish a violation of the Equal Protection Clause, a plaintiff must establish that he was treated differently from other similarly-situated individuals with respect to a governmental act, statute or regulation. Here, based on the allegations of race discrimination, Plaintiffs must prove that the Individual Defendants intentionally treated Plaintiffs differently based on their race. *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1986). Plaintiffs may rely on direct or circumstantial evidence of discrimination to meet this burden. *Id*. at 1011.

Plaintiffs rely on the same evidence in support of their Section 1983 that this court discussed in its consideration of Plaintiffs' prima facie case under Title VI. The analysis is equally applicable in this instance. For the reasons stated above, this court finds that Plaintiffs have failed to show that the Individual Defendants engaged in intentional discrimination against Plaintiffs' based on their race and that the Individual Defendants are entitled to summary judgment on Plaintiffs' Second Claim for Relief.

3. Section 1985

The analysis applicable to Plaintiffs' Section 1983 and, to some degree, Title VI claims, are dispositive of Plaintiffs Fourth Claim for Relief under 42 U.S.C. § 1985(3)("Section 1985") as well. The purpose of Section 1985 is to remedy conspiracies by two or more persons that have "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Plaintiffs allege that the Individual

Defendants engaged in a conspiracy to interfere with Plaintiffs' civil rights under the Equal Protection Clause by holding secret meetings specifically aimed at getting Plaintiffs out of the firefighting business, all in violation of the Equal Protection Clause.  These meetings allegedly occurred throughout 2004 and 2005 and were attended by the Individual Defendants and representatives from the Oregon Department of Justice, SAIF, and BOLI.

The Ninth Circuit has adopted the definition of "person" enunciated by the Supreme Court in *Will* and applied it to claims brought under Section 1985.  *Bond v. Franchise Tax Bd.*, 175 F. App'x 822 (9th Cir. 2006).[14]  Plaintiffs have alleged that the Individual Defendants are state employees and were engaged in their official duties during the relevant periods in their Section 1985 claim.  Accordingly, Plaintiffs are limited to prospective injunctive relief against the Individual Defendants on their Section 1985 claim as well.  Similarly, the analysis addressing the issue of whether Plaintiffs have presented a justiciable claim or controversy under Article III of the Constitution applies to Plaintiffs' claims for injunctive relief under Section 1985.  Based on this courts finding that Plaintiffs have failed to establish the existence of a credible threat that the Individual Defendants will again conspire to discriminate against them on the basis of their race, Plaintiffs are unable to present a current case or controversy under Section 1985 and this claim should be dismissed.

Again, even assuming that Plaintiffs have alleged a justiciable claim under Section 1985, they have failed to present evidence sufficient to establish a prima facie case of a discriminatory conspiracy.  In addition to the evidence and allegations addressed above, which this court has

---

[14]As discussed above, the Supreme Court has held that state employees acting in their official capacity are "persons" under Section 1983 with regard to claims for prospective injunctive relief only. *Will v. Michigan*, 491 U.S. at 71.

determined to be insufficient to prove intentional discriminatory conduct by the Individual Defendants, Plaintiffs allege in their complaint that Stan Wojtyla, a representative from BOLI who attended meetings with ODF and other state agencies, testified under oath at a BOLI hearing "that the express purpose of said meeting was to take Plaintiff Mountain Forestry's license, cancel its workers compensation insurance, and thus put it out of business." (Compl. ¶ 18.)  There is no admissible evidence in the record supporting this allegation.  Plaintiffs have not offered a transcript of the hearing or a declaration or affidavit from Wojtyla.  Additionally, there is no evidence that the Individual Defendants were motivated by racial animus to share information with other agencies or, as discussed above, to investigate and discipline Plaintiffs for violations that were, based on the record, justified.

Plaintiffs have failed to support their Section 1985 claim with evidence that the Individual Defendants conspired to deprive Plaintiffs of equal protection of the law based on their Hispanic descent.  Consequently, Defendants are entitled to summary judgment on Plaintiffs' Fourth Claim for Relief.

4. Section 1981

Plaintiffs Third Claim for Relief is based on 42 U.S.C. §1981 ("Section 1981") which prohibits racial discrimination in the making and enforcement of contracts.  The Ninth Circuit recently had the opportunity to revisit the opinion of the Supreme Court set forth in *Jett v. Dallas Independent School Dist.* that "the prohibition on discrimination by a state or its officials contained in § 1981 can be enforced against state actors only by means of § 1983" in light of the enactment of 42 U.S.C. § 1981(c) ("Section 1981(c)").  *Pittman v. Oregon*, 509 F.3d 1065, 1068 (9th Cir. 2007)(citing *Jett v. Dallas Independent School Dist.*, 491 U.S. 701 (1989)).  Subsection 1981(c)

provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under the color of State law."  42 U.S.C. § 1981(c) (2000).  In *Pittman*, the Ninth Circuit rejected the plaintiff's argument that the addition of Section 1981(c) overruled *Jett* and created a cause of action against both municipalities and the arms of the state under Section 1981 and held that "§ 1981 does not contain a cause of action against states."  *Pittman*, 509 F.3d at 1074.

The court acknowledges that judges in this District differ in their opinions on this issue. For example, Judge Brown followed *Jett* in *Pittman v. Oregon*, No. 05-509, 2005 WL 1899379 (D. Or. Aug. 8, 2005), *aff'd*, 509 F.3d 1065 (9th Cir. 2007), while Judge Ashmanskas allowed a plaintiff to pursue a Section 1981 claim against the Oregon Department of Agriculture in *Engquist v. Oregon Dep't. of Agric.*, No. 02-1637, 2004 WL 7927790 (D. Or. Apr. 8, 2004), *rev.d on other grounds*, 478 F.3d 985 (9th Cir. 2007), *cert. granted*, 128 S. Ct. 977 (2008).  In light of the recent Ninth Circuit ruling, which occurred after *Engquist* and affirmed Judge Brown's opinion, this court finds that Plaintiffs are unable to state a claim against the Individual Defendants as state actors under Section 1981.

## Conclusion

Defendants' motion (#38) for summary judgment should be GRANTED in its entirety and Plaintiffs' claims dismissed with prejudice.

## Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due no later than **April 24, 2008**.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed.  Review of the Findings and Recommendation will go under advisement when

the response is due or filed, whichever date is earlier.

DATED this 9th day of April, 2008.


                                    /s/ John V. Acosta
                                    JOHN V. ACOSTA
                                    United States Magistrate Judge